**Frank R. NUTIS, et al.,**

v.

**PENN MERCHANDISING CORP., et al.**

**Civ. A. No. 83–5708.**

United States District Court,
E.D. Pennsylvania.

Aug. 15, 1985.

David L. Braverman, Fellheimer, Eichen & Goodman, Philadelphia, Pa., for plaintiffs.

Stuart H. Savett, Kohn, Savett, Marion & Graf, Philadelphia, Pa., for defendants.

## OPINION

LUONGO, Chief Judge.

Plaintiffs, minority shareholders of Penn Merchandising Corporation ("Old Penn"), brought this federal securities action against certain officers, directors and controlling shareholders of Old Penn. In an Opinion and Order filed June 18, 1985 I

---

dismissed plaintiffs' amended complaint for failure to state a cause of action. Plaintiffs have now moved for partial reconsideration and for leave to file a second amended complaint. For the reasons that follow, I will deny the motion.

■ Plaintiffs seek to have the judgment of dismissal reconsidered on the basis of facts alleged in their proposed second amended complaint. Their motion is essentially one to "alter or amend the judgment" under Fed.R.Civ.P. 59(e). *See Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Adams v. Gould, Inc.*, 739 F.2d 858, 863–64 (3d Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985); *Parks v. "Mr. Ford,"* 68 F.R.D. 305, 308–09 (E.D.Pa.1975), *rev'd in part on other grounds*, 556 F.2d 132 (3d Cir.1977). In considering plaintiffs' motion, however, I must follow the mandate of Rule 15(a) that leave to amend "shall be freely given when justice so requires." Both a motion to alter a judgment and a motion for leave to amend a complaint are addressed to the sound discretion of the district court. *Adams*, 739 F.2d at 863–64; *United States Labor Party v. Oremus*, 619 F.2d 683, 692 (7th Cir.1980).

■ According to the Supreme Court, a motion to amend should be granted absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman*, 371 U.S. at 182, 83 S.Ct. at 230. Denial of plaintiffs' request for leave to amend is justified on the ground that the proposed second amended complaint does not set forth a claim on which relief can be granted. Amendment would therefore be futile.

Plaintiffs seek to amend their complaint to include the following allegations. At some time in 1978, defendants formulated a plan to obtain control of Old Penn and take the company private, eliminating the minority shareholders. Pursuant to and without disclosing this plan, defendants purchased hundreds of thousands of shares of Old Penn common stock.

Plaintiffs began to purchase Old Penn common stock in October of 1981. They anticipated a long-term return on their investment, having determined that Old Penn's management team was excellent and that its asset value far exceeded the market price for its common stock.

In March, 1983, Old Penn offered to purchase up to 350,000 shares of its common stock for $4.00 per share. The tender offer materials stated that the company intended to acquire a pool of treasury stock for future use. Defendants' alleged plan to take Old Penn private was not revealed. Plaintiffs claim they were misled by defendants' statements and continued to purchase shares, believing that all shareholders would eventually profit as a result of defendants' management activities. Plaintiffs claim they would not have purchased shares had they known defendants would take Old Penn private within the next few months. Their claim of injury is based on their ownership of shares at the time of the merger agreement, when minority shareholders were allegedly forced out at an inadequate price.

Plaintiffs' counsel discussed these allegations in somewhat less articulate fashion at time of oral argument. Although in ruling on defendants' motion to dismiss I could not formally consider allegations outside the amended complaint, I noted in my June 18 Opinion that plaintiffs' oral presentation gave me no indication that they could amend the complaint to state a federal securities law claim. Plaintiffs' more complete presentation of their proposed amendments in connection with the present motion does not convince me otherwise.

Plaintiffs' proposed second amended complaint essentially alleges that defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5, by trading in Old Penn's securities without disclosing material inside information. In order to recover, plaintiffs must ultimately prove

that defendants had a duty to disclose or abstain from trading, and that the allegedly undisclosed information was material. *See, e.g., Chiarella v. United States,* 445 U.S. 222, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980); *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Defendants do not deny that they are corporate insiders with an affirmative duty to disclose. I must therefore determine whether plaintiffs have adequately alleged that defendants breached their duty by trading on the basis of undisclosed material information.

I dismissed plaintiffs' first amended complaint in part because it failed properly to allege that defendants withheld material information. The amended complaint did not allege that plaintiffs purchased or sold securities because of defendants' purported misdeeds. Instead, plaintiffs' securities claim was based on the injuries they allegedly sustained as "forced sellers" under the merger agreement. Because plaintiffs' votes were not needed to approve the merger, I applied the standard of materiality set forth in *Healey v. Catalyst Recovery of Pennsylvania, Inc.,* 616 F.2d 641, 645–48 (3d Cir.1980), and found the complaint defective in failing to allege that plaintiffs would have acted differently had defendants' merger plans been disclosed earlier.

Plaintiffs now state that they purchased Old Penn stock from 1981 to 1983, and that those purchases would not have been made had defendants disclosed their plans. Although plaintiffs have thereby avoided the concerns addressed in *Healey,* their allegations are not sufficient to show that defendants' plans were material. Plaintiffs

must still allege sufficient information to withstand the rule of *Greenfield v. Heublein, Inc.,* 742 F.2d 751 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985), that tentative merger plans are immaterial as a matter of law.[1]

■ Under *Greenfield,* a duty to disclose a merger plan arises only when there is an "agreement in principle" to merge. *Id.* at 756–57. *See also Staffin v. Greenberg,* 672 F.2d 1196, 1205–07 (3d Cir.1982). Contrary to plaintiffs' contention, the fact that defendants controlled both New Penn Merchandising Corporation, the acquiring company, and Old Penn, the target, is not sufficient to show that an agreement in principle existed. *Greenfield* describes an agreement in principle as an agreement on the fundamental terms of the merger, such as price and structure. *Id.* The court's concern that disclosure of preliminary discussions and plans can itself be misleading applies with full force to the "going private" merger at issue in this case.

Plaintiffs have not alleged that a concrete agreement was reached. They merely state in conclusory fashion that defendants, since "sometime in 1978," have planned to take Old Penn private. I do not suggest that plaintiffs must set forth the precise details of a merger plan in order to avoid dismissal of the complaint. Plaintiffs must, however, do more than merely allege that defendants had a plan. Some information must be set forth which would permit an inference that defendants had formulated an agreement of sufficient specificity to incur a duty of disclosure.[2] Without such

1. In my June 18 Opinion, I noted that information concerning a concrete merger plan would have been material to shareholders deciding whether to accept Old Penn's tender offer. Because plaintiffs did not allege they were injured by an investment decision made at the time of the tender offer, and because plaintiffs' allegations were inadequate in light of *Healey*'s requirements, it was not necessary for me to determine whether plaintiffs had sufficiently alleged the existence of such a concrete plan. Plaintiffs have now shifted the focus of their complaint to investment decisions made before the agreement of merger. I must therefore address the sufficiency of the allegations concerning defendants' merger plans.

2. Plaintiffs have submitted certain extrinsic materials in support of their contentions. Although the issue before me concerns the legal sufficiency of plaintiffs' proposed amendments, I have, out of an abundance of caution, examined those materials to aid in determining whether plaintiffs can prove any set of facts in support of their claim. Plaintiffs' submissions contain no information from which I can infer that plaintiffs will be able to satisfy the requirements of *Greenfield.* The affidavit of Paul E.

information, plaintiffs' allegations do no more than reiterate the basic theme of the amended complaint: that defendants planned to perpetuate their control at the expense of the minority shareholders. Such allegations do not state a claim under federal securities law. *See, e.g., Panter v. Marshall Field & Co.*, 646 F.2d 271, 287–89 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981); *Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir.1978); *Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del.1984); *Sanders v. Thrall Car Manufacturing Co.*, 582 F.Supp. 945 (S.D.N.Y.1983), *aff'd per curiam*, 730 F.2d 910 (2d Cir.1984); *Issen v. GSC Enterprises*, 508 F.Supp. 1278 (N.D.Ill.1981).

Accepting plaintiffs' allegations concerning defendants' activities, I find it difficult to characterize this as an "insider trading" case at all. Insider trading is considered fraudulent because of the " 'inherent unfairness involved where one takes advantage' of 'information intended to be available only for a corporate purpose and not for the personal benefit of anyone.' " *Dirks v. SEC*, 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983) (quoting *In re Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 S.E.C. 933, 936 (1968)). Plaintiffs, however, have not alleged that defendants traded on the basis of inside information. This is not a case in which defendants are accused of purchasing stock knowing that the corporation's imminent announcement of a merger agreement would cause the price of the stock to rise. Instead, to use plaintiffs' own words, "defendants were purchasing Old Penn common stock *in execution of* their plan to take Old Penn private." Plaintiffs' Motion for Partial Reconsideration at 11 (emphasis added). Plaintiffs have in effect alleged only that defendants were striving to increase their control of Old Penn. Although

defendants may have breached certain fiduciary duties in the process, their failure to publicize their intentions is not the type of material nondisclosure contemplated by the "disclose or abstain" rule. Defendants were certainly not obliged to announce the obvious fact that their purchases of Old Penn stock would increase their control. *See Rodman v. Grant Foundation*, 608 F.2d 64, 73 (2d Cir.1979); *Issen*, 508 F.Supp. at 1291 n. 10.

■ The proposed second amended complaint is also defective with respect to the requirement of "loss causation." That requirement is satisfied "only if the misrepresentation touches upon the reasons for the investment's decline in value." *In re Catanella*, 583 F.Supp. 1388, 1415 (E.D.Pa.1984) (quoting *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part, rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983)); *Beissinger v. Rockwood Computer Corp.*, 529 F.Supp. 770, 787 (E.D.Pa. 1981). If an intervening cause, such as a breach of fiduciary duty, is responsible for the loss, recovery under § 10(b) and Rule 10b–5 is not permitted. *Catanella*, 583 F.Supp. at 1415–16; *Warner Communications*, 581 F.Supp. at 1495.

In the instant case, plaintiffs' alleged injuries, like defendants' alleged nondisclosures, are beyond the scope of the classic insider trading claim. Normally, a plaintiff will allege that he sold stock at a time when an insider was purchasing (or vice versa). The basis for recovery is that "defendant had profited through the purchase of stock, whereas plaintiff contemporaneously had sustained a loss through the sale of his stock due to an imbalance of information." *Laventhall v. General Dynamics Corp.*, 704 F.2d 407, 412 (8th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 150, 78 L.Ed.2d 140 (1983). As the *Laventhall* court pointed out:

Veit states only that Old Penn's management may in 1981 have considered taking the company private. Veit's supplemental affidavit, which states his opinion that defendant Jerome Schottenstein intended to take Old Penn private, is not evidence of the concrete merger plan re-

quired by *Greenfield*. Similarly, the complaint in *Waterman v. Schottenstein*, No. C2–84–1264 (S.D.Ohio filed June 28, 1984), sets forth not facts, but merely another shareholder's allegations concerning defendants' plans for Old Penn.

The legal justification for liability of the corporate insider to the outside uninformed investor is that if the insider trades on the basis of the inside information it may profit at the expense of outside investors who are disadvantaged in the same or similar transaction by lack of the inside information. Thus, in this hypothetical transaction there is a direct nexus between the defendant's gain and the plaintiff's loss.

*Id.*

The required nexus has not been adequately alleged in this case. According to plaintiffs, plaintiffs and defendants were all purchasing Old Penn stock at the time of the alleged nondisclosures. Plaintiffs do not claim to have suffered losses from trading with inadequate information. Instead, they claim they would never have purchased Old Penn stock had they known of defendants' plans. If plaintiffs had not owned Old Penn stock at the time of the merger agreement, they would not have been forced out at an inadequate price.

These claims allege only transactional or "but for" causation and fail to show that defendants' misdeeds caused plaintiffs' losses. Although losses incurred under an unfair merger agreement may be attributable to a breach of fiduciary duty, they cannot be traced to defendants' failure to disclose their plans earlier. Defendants' nondisclosures "may well have induced the purchase of the stock," but were "remote and wholly unrelated to" the price ultimately offered for plaintiffs' stock. *Catanella*, 583 F.Supp. at 1416. *See also Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61–62 (2d Cir.1985); *La-*venthall, 704 F.2d at 412–15; *Warner Communications*, 581 F.Supp. at 1495.

Plaintiffs' allegations of damage are themselves highly questionable. Recovery under the 1934 Act is limited to "actual damages." 15 U.S.C. § 78bb(a). Although such damages may consist of more than out of pocket losses, a plaintiff may not recover for an entirely speculative loss of profits. *See, e.g., Osofsky v. Zipf*, 645 F.2d 107, 111–14 (2d Cir.1981); *Gould v. American-Hawaiian Steamship Co.*, 535 F.2d 761, 781 (3d Cir.1976); *Rubenstein v. IU International Corp.*, 506 F.Supp. 311, 316–17 (E.D.Pa.1980).

Although the allegations in the proposed second amended complaint concerning plaintiffs' shares are incomplete,[3] it appears that approximately one half of plaintiffs' shares were purchased at prices equal to or less than the merger price of $4.00 per share. Second Amended Complaint at ¶ 5. Plaintiffs do not claim out of pocket losses as to these shares. In fact, they place relatively little emphasis on any out of pocket losses they may have sustained. The bulk of their damage claim rests on their "inability to share in the profitability of Old Penn" after the projected merger date. *Id.* at ¶ 25. Plaintiffs' "disappointment in the outcome of a speculative series of trades is not a sufficient basis for the serious securities violations alleged." *Zuckerman v. Harnischfeger Corp.*, 591 F.Supp. 112, 122 (S.D.N.Y.1984).

I will deny plaintiffs' motion to amend on the ground that amendment would be futile. I note, however, that plaintiffs had ample opportunity to amend the complaint earlier, and have not explained their reason for waiting until judgment of dismissal had

---

**3.** At oral argument and in the June 18 Opinion, I expressed concern at plaintiffs' failure to state precisely when they purchased their shares. Plaintiffs purport to do so in ¶ 5 of their proposed second amended complaint, but apparently either their information or their mathematical ability is deficient. According to my calculations, plaintiffs claim to own a total of 53,306 shares. They have itemized the purchase date and price paid for only 48,906 of those shares, leaving 4,400 unaccounted for. Most puzzling is the fact that the discrepancies are spread out among various plaintiffs. Plaintiff Ball Brokerage is said to own 8,756 shares, but only 7,456 are accounted for. Cutler Company is said to own 22,500 shares, but only 21,500 are accounted for. Discrepancies also exist with respect to the shares listed for Nu Cutler and Michael Cutler. I am disturbed at plaintiffs' apparent inability, even after dismissal of their complaint in part for failure to allege loss causation and damage, to set forth their facts and figures accurately.

been entered. Any new facts set forth in the proposed second amended complaint were necessarily within plaintiffs' knowledge even before the first complaint was filed. As plaintiffs themselves note, they did attempt to raise new issues in earlier memoranda and at oral argument. Their new issues and theories, however, were neither clearly articulated nor properly presented to the court. Not until I filed an opinion explaining how plaintiffs' complaint was deficient did they present a reasonably lucid, (although still meritless), alternative theory of recovery.

Throughout this litigation, plaintiffs have struggled to bring defendants' purported misdeeds within the scope of the federal securities laws. Although plaintiffs have obscured the issues through their convoluted arguments and theories of recovery, a careful scrutiny of their pleadings reveals that plaintiffs are essentially complaining of unfair treatment by fiduciaries. Under *Santa Fe Industries v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), such claims do not state a federal cause of action. I originally denied plaintiffs leave to amend because they had presented no facts which could cure their defective complaint and because of reluctance to "authorize an effort to circumvent *Santa Fe Industries v. Green* through still more artful pleading." *Nutis v. Penn Merchandising Corp.*, 610 F.Supp. 1573, 1583 (1985). In my view, plaintiffs' proposed amendment constitutes an effort to circumvent both *Santa Fe* and the June 18 Opinion and Order dismissing their amended complaint. Absent compelling circumstances not present here, plaintiffs should not be permitted "to pursue a case to judgment and then, if they lose, to reopen the case by amending their complaint to take account of the court's decision." *James v. Watt*, 716 F.2d 71, 78 (1st Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 2397, 81 L.Ed.2d 354 (1984). *See also Commonwealth of Pennsylvania v. Local 542*, 569 F.Supp. 582, 589 (E.D.Pa.1983). Plaintiffs' motion for partial reconsideration and for leave to amend will be denied.