819 F.2d 418
 26 ERC 1339, 17 Envtl. L. Rep. 21,281
 John J. BUDINSKY, Individually and t/d/b/a Colpat Mine, Appellant,
v.
COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL
RESOURCES, Nicholas DeBenedictis, individually and in his
capacity as Secretary of the Commonwealth of Pennsylvania,
Department of Environmental Resources, Hugh V. Archer,
Individually and in his capacity as Regional Water Quality
Manager of the Bureau of Water Quality Management of the
Commonwealth of Pennsylvania Department of Environmental
Resources, Tony Smerdel, Individually and in his capacity as
Chief, Permits Division Bureau of Water Quality Management
of the Commonwealth of Penna. Dept. of Environmental Resources.
 No. 86-3665.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
May 12, 1987.
Decided May 27, 1987.
Rehearing Denied June 23, 1987.
 
 Mark Clement, Pittsburgh, Pa., for appellant.
 LeRoy S. Zimmerman, Atty. Gen., Thomas F. Halloran, John G. Knorr, Sr. Deputy Attys. Gen., Andrew S. Gordon, Chief Deputy Atty. Gen., Chief, Litigation Section, Pittsburgh, Pa., for appellees.
 Before GIBBONS, Chief Judge, MANSMANN, Circuit Judge, and KATZ, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 This matter comes before us on appeal from an order of the district court, which granted motions by the defendants--the Pennsylvania Department of Environmental Resources, et al. ("the DER")--to dismiss the complaint and amended complaint of the plaintiff, John J. Budinsky. We possess jurisdiction pursuant to 28 U.S.C. Sec. 1291 (1982).
 
 
 2
 Budinsky claims that the Surface Mining Control and Reclamation Act of 1977 ("SMCRA"), 30 U.S.C. Sec. 1201-1328, preempts certain sections of Pennsylvania's Clean Streams Law, 35 Pa.Stat.Ann. Secs. 691.1-691.1001 (Purdon 1977 & Supp.1986), sections of the Pennsylvania Surface Mining Conservation and Reclamation Act, 52 Pa.Stat.Ann. Secs. 1396.1-1396.31 (Purdon Supp.1986), and sections of the regulations at 25 Pa.Code Sec. 86.1-86.242 (1985). Because the SMCRA exempts from its provisions "the extraction of coal for commercial purposes where the surface mining operation affects two acres or less," 30 U.S.C. Sec. 1278(2), Budinsky contends that the DER cannot require him to obtain a state permit for his less-than-two-acre mine.
 
 
 3
 However, the SMCRA also states that "[a]ny provision of any State law or regulation ... which provides for more stringent land use and environmental controls and regulations of surface coal mining and reclamation operation than do the provisions of this chapter or any regulation issued pursuant thereto shall not be construed to be inconsistent with this chapter." 30 U.S.C. Sec. 1255(b). Because the district court properly concluded in light of Sec. 1255(b) that "the federal statute does not supersede the Pennsylvania state laws and regulations and [that] defendants have not violated federal law by enforcing the provisions of the Pennsylvania laws against Budinsky[,]" Budinsky v. Pennsylvania Dept. of Environmental Resources, No. 86-203, slip op. at 6 (W.D.Pa. Oct. 22, 1986) (hereinafter "slip op."), we will affirm the district court's judgment.
 
 I.
 
 4
 Budinsky owns a small bituminous coal mine in Perry Township, Green County, Pennsylvania known as the Colpat mine. On November 28, 1977, the DER issued Budinsky a mine drainage permit which allowed him to mine 40,000 tons of coal per year. According to the plaintiff, he thereupon constructed water treatment systems, haul roads, and electrical systems to exploit the Colpat mine's reserves for commercial purposes. Over the next seven years, Budinsky spent $40,000 and exerted substantial personal effort to develop and to maintain his mine. The combined surface and underground mining activities disturbed less than two acres of surface area.
 
 
 5
 Meanwhile, Congress in 1977 enacted the SMCRA which proposed, inter alia, to establish national minimum standards "to protect society and the environment from the adverse effects of surface coal mining operations[.]" 30 U.S.C. Sec. 1202(a). Under the SMCRA, the several states may "assume exclusive jurisdiction over the regulation of surface coal mining and reclamation operations ...," 30 U.S.C. Sec. 1253(a), by developing and submitting for the approval of the Secretary of the Interior "a program which demonstrates that such State has the capability of carrying out the provisions of this chapter and meeting its purposes...." Id. Title 30 U.S.C. Sec. 1255(a) states accordingly that "[n]o State law or regulation ... shall be superseded by any provision of this chapter or any regulation issued pursuant thereto, except insofar as such State law or regulation is inconsistent with the provisions of this chapter."
 
 Notably, the SMCRA provides:
 
 6
 The provisions of this chapter shall not apply to any of the following activities:
 
 
 7
 * * *
 
 
 8
 (2) the extraction of coal for commercial purposes where the surface mining operation affects two acres or less[.]
 
 
 9
 30 U.S.C. Sec. 1278(2). However, the SMCRA also states:
 
 
 10
 Any provision of any State law or regulation ... which provides for more stringent land use and environmental controls and regulations of surface coal mining and reclamation operation than do the provisions of this chapter or any regulation issued pursuant thereto shall not be construed to be inconsistent with this chapter. The Secretary shall set forth any State law or regulation which is construed to be inconsistent with this chapter. Any provision of any State law or regulation ... which provides for the control and regulation of surface mining and reclamation operations for which no provision is contained in this chapter shall not be construed to be inconsistent with this chapter.
 
 
 11
 30 U.S.C. Sec. 1255(b).
 
 
 12
 On October 10, 1980, Pennsylvania's General Assembly and the DER, respectively, amended their statutes and regulations in light of the SMCRA, and the federal Department of the Interior approved the state's program. Those amendments require mine operators to obtain permits for all mining activity, and contain no exemption for small mines. See 35 Pa.Stat.Ann. Sec. 691.315(a) (Purdon Supp.1986); 52 Pa.Stat.Ann. Sec. 1396.4; (Purdon Supp.1986); 25 Pa.Code Sec. 86.11 (1985). On March 31, 1983, the DER informed Budinsky that his current mine drainage permit would allow continued activity at the Colpat mine until April 24, 1984; thereafter, he would have to complete a repermitting application. Budinsky, however, instead notified the DER that 30 U.S.C. Sec. 1278(2) exempted the Colpat mine from the state's requirements.
 
 
 13
 In July of 1984, the DER ordered Budinsky to cease operations until he submitted a re-permitting application. Budinsky appealed the compliance order to the Pennsylvania Environmental Hearing Board which denied his claim. Budinsky then filed this action in the district court on January 27, 1986 seeking declaratory and injunctive relief. The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted alleging, inter alia, that "there is specific federal statutory authority permitting states to establish more stringent standards than those established by federal statute."
 
 
 14
 Before the district court determined the defendants' Rule 12(b)(6) motion, the plaintiff filed an amended complaint which added claims for compensatory and punitive damages and proffered the alternative theory that the defendants' actions violated the Fifth and Fourteenth Amendments. The defendants renewed their motion to dismiss with respect to the amended complaint.
 
 
 15
 On October 22, 1986, the district court issued a memorandum opinion and order dismissing both the complaint and the amended complaint on the ground that "the [SMCRA] specifically permit[s] a state to adopt more stringent environmental controls than those embodied in the federal Act." Slip op. at 8. This timely appeal followed that final order.
 
 II.
 
 16
 The plaintiff presses two basic issues on appeal. First, Budinsky insists that 30 U.S.C. Sec. 1255 applies solely to the "procedural, technical, and substantive permit application requirements" in 30 U.S.C. Secs. 1256 and 1257. Thus, Sec. 1255 does not, according to Budinsky, allow the DER to regulate mining operations affecting less than two acres. In a related argument, the plaintiff contends that 30 U.S.C. Sec. 1278(2) shelters less-than-two-acre mines altogether from federal and state regulation under the SMCRA. Second, Budinsky complains that the district court abused its discretion in refusing to grant him leave to amend his complaint further to "add the Secretary of the Interior as a Defendant as a result of his failure to require the Two Acre Exemption as part of Pennsylvania's primacy program."
 
 
 17
 Because this appeal derives from a motion to dismiss, "the material allegations of the complaint are taken as admitted." Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). We must also liberally construe the complaint in the plaintiff's favor. Id., citing Fed.R.Civ.P. 8(f) and Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Finally, of course, we follow "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief [footnote omitted]." Conley, 355 U.S. at 45-46, 78 S.Ct. at 102.
 
 
 18
 We may reverse a district court's refusal to permit Budinsky to amend his complaint if the court abused its discretion with respect to the liberal standard of Fed.R.Civ.P. 15(a). Adams v. Gould Inc., 739 F.2d 858, 863 (3d Cir.1984), cert. denied, 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985). Although in Adams we acknowledged the liberal amendment philosophy of Rule 15, we emphasized that a district court may "refuse to allow an amendment that fails to state a cause of action." Id. at 864, citing Massarsky v. General Motors Corp., 706 F.2d 111, 125 (3d Cir.), cert. denied, 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983).
 
 III.
 A.
 
 19
 Initially, nothing in the plain language of the SMCRA suggests that the Act preempts the regulation of less-than-two-acre mines. The federal provisions simply do not affect "the extraction of coal for commercial purposes where the surface mining operation affects two acres or less." 30 U.S.C. Sec. 1278(2). Moreover, Congress never intended 30 U.S.C. Sec. 1255(b) to apply, as Budinsky argues, only to Secs. 1256 and 1257. Section 1255 clearly states that no state law or regulation more stringent than "the provisions of this chapter or any regulation issued pursuant thereto ...," 30 U.S.C. Sec. 1255(b) (emphasis added), "shall be superseded by any provision of this chapter or any regulation issued pursuant thereto...." 30 U.S.C. Sec. 1255(a). The SMCRA occupies all of Chapter 25 of Title 30. Section 1255, then, manifestly pertains to the entire Act, including the two-acre exemption of Sec. 1278(2).
 
 
 20
 Concededly, as Budinsky contends, 30 C.F.R. Sec. 718.1 applies the "more stringent" language of 30 U.S.C. Sec. 1255 to "performance standards" promulgated pursuant to the SMCRA. Title 30 C.F.R. Sec. 718.1(a) (1986) states:
 
 
 21
 Any State law or regulation which is determined by the Secretary under the procedures in this section to be a more stringent performance standard for regulation of surface coal mining and reclamation operations than that provided under a performance standard in Parts 715, 716, or 717 of this chapter shall be adopted by the Secretary and applied in that State instead of the requirements of the standards in Parts 715, 716, or 717.
 
 
 22
 That regulation, however, in no way proves Budinsky's argument "that 30 U.S.C. 1255(b) is intended to apply only to those sections of Title V of SMCRA which set forth performance standards...." To the contrary, 30 C.F.R. Sec. 700.3 states:
 
 
 23
 The Secretary is authorized to administer the requirements of the Act, except the following: ...
 
 
 24
 (c) Authority retained by the States to enforce State laws or regulations which are not inconsistent with the Act and this chapter, including the authority to enforce more stringent land use and environmental controls and regulations.
 
 
 25
 30 C.F.R. Sec. 700.3 (1986) (emphasis added). Because Pennsylvania's blanket permit provisions represent (in terms of 30 U.S.C. Sec. 1255(b)) "more stringent land use and environmental controls and regulations ..." than Sec. 1278(2), the SMCRA does not void the state's re-permitting requirement.
 
 
 26
 The DER's view, contrary to Budinsky's, respects the express Congressional finding that:
 
 
 27
 because of the diversity in terrain, climate, biologic, chemical, and other physical conditions in areas subject to mining operations, the primary governmental responsibility for developing, authorizing, issuing, and enforcing regulations for surface mining and reclamation operations subject to this chapter should rest with the States[.]
 
 
 28
 30 U.S.C. Sec. 1201(f) (emphasis added). The SMCRA nowhere hints that Congress insulated less-than-two-acre mines from state regulatory schemes.
 
 
 29
 Budinsky misplaces his reliance on Virginia ex rel. Virginia Dept. of Conservation and Economic Dev. v. Watt, 741 F.2d 37 (4th Cir.), cert. granted, 469 U.S. 979, 105 S.Ct. 379, 83 L.Ed.2d 315 and cert. dismissed, 469 U.S. 1198, 105 S.Ct. 983, 83 L.Ed.2d 984 (1985). There, as the plaintiff recognizes, the court of appeals held that the district court lacked jurisdiction to enjoin preliminarily the Office of Surface Mining ("OSM") from issuing cessation orders against certain mine operators who enjoyed two-acre exemptions under state law which, according to OSM, were more liberal than both applicable federal regulations and Virginia's SMCRA-approved state program. Budinsky, however, "relies on [Watt ] to demonstrate that Interior's approval of Pennsylvania primacy without the Two Acre Exemption should not be given much stock, since other States have the Two Acre Exemption."[1] Budinsky's argument, though, erroneously assumes that the mere presence of some form of two-acre exemption in one federally-approved state program requires such provisions in Pennsylvania. We reiterate that nothing in the SMCRA precludes a state from exceeding the Act's land use and environmental directives with more stringent standards.
 
 
 30
 In short, we find that the SMCRA admits of Pennsylvania's across-the-board permit requirements.
 
 B.
 
 31
 In light of this holding, we find that the district court did not abuse its discretion in refusing to grant Budinsky's motion to amend his complaint further to "add the Secretary of the Interior as a defendant as a result of his failure to require the Two Acre Exemption as part of Pennsylvania's primacy program." This amendment would in no way cure the failure of the complaint to state a claim upon which relief could be granted. See Adams, 739 F.2d at 864; Massarsky, 706 F.2d at 125.
 
 IV.
 
 32
 The judgment of the district court will be affirmed.
 
 
 
 *
 Honorable Marvin Katz of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 In Watt, the court of appeals noted:
 The Commonwealth's state regulatory program was approved on December 15, 1981, subject to its compliance with certain conditions, including two conditions related to a federal exemption for mining operations which affect less than two acres [footnote omitted]. Subsequently, in 1982, the Virginia legislature enacted Chapter 23, Va.Code 45.1-362 through 45.1-380 (1982), entitled "Surface Mining of Coal for Operations Disturbing Two Surface Acres or Less."
 741 F.2d at 38.